```
                    United States District Court
                      District of Massachusetts
_____
                                    )
BARLETTA HEAVY DIVISION, INC.,      )
        Plaintiff,                  )
                                    )
        v.                          )    Civil Action No.
                                    )    09-10143-NMG
ERIE INTERSTATE CONTRACTORS,        )
INC., PHOENIX DEVELOPMENT &         )
CONSTRUCTION, INC., GREGORY         )
ZAFIRAKIS, STEVEN MOUTSASTOS,       )
STEVEN ZAFIRAKIS and ERIE           )
PAINTING & MAINTENANCE, INC.        )
        Defendants.                 )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This is a breach of contract action arising out of two related contracts. Plaintiff Barletta Heavy Division, Inc. ("Barletta") brought suit against defendants Erie Interstate Contractors, Inc. ("Erie"), Phoenix Development and Construction, Inc. ("Phoenix"), Gregory Zafirakis ("Gregory"), Steven Zafirakis ("Steven"), Steven Moutsastos ("Moutsastos"), Markos Bahas ("Bahas") and Erie Painting and Maintenance, Inc. ("EPM").[1] Gregory and Bahas are the Chief Executive Officers of Erie. Gregory's son, Steven, is the principal owner of Phoenix and Moutsastos is the President of Phoenix.

---

[1] Bahas has been voluntarily dismissed as a defendant.

-1-

Plaintiff seeks a declaratory judgment that it is entitled to retain equipment owned by the defendants pursuant to a security agreement (Count I) and that the defendants are liable for breach of a subcontract (Count II), unjust enrichment (Count III), violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws ch. 93A) (Count IV) and breach of the security agreement (Count V). Before the Court are the parties' motions for summary judgment, the defendant's motion for a hearing and the plaintiff's assented-to motion to strike its own jury demand.

## I. Factual Background

Barletta was the general contractor on a project for Massport known as the "Pier Rehabilitation Project" in South Boston, Massachusetts ("the Project"). Barletta hired Erie as a subcontractor for the Project to provide labor, material and equipment to clean, prepare and paint a new and existing under-deck structural steel support system. Barletta and Erie entered into a subcontract agreement ("the Subcontract") on July 21, 2006, by which Erie agreed to perform specified work and Barletta agreed to pay $2,211,515.

Erie began work on the Project in August, 2006 but soon experienced financial difficulty. Because of that difficulty and because Erie was behind schedule on its work, Barletta paid a number of Erie's Project-related costs and taxes between January and September, 2007. Barletta maintains that it did so to keep

the Project on track and to avoid a liquidated damages claim by Massport but that it never told Erie that it would not back charge for those payments. Erie responds that Barletta never indicated that it would impose back charges.

In late 2007, Erie's Chairman, Gregory, made several requests to Barletta seeking additional cash that would allow Erie to continue work on the Project. After one such request, Barletta agreed to lend Phoenix, a related company, $150,000 pursuant to a Revolving Credit Promissory Note and a Security Agreement ("the Security Agreement"). The Security Agreement was entered into by Erie, Phoenix, and, in their individual capacities, Gregory, Steven, Moutsastos and Bahas (collectively "the Debtors").[2] The Security Agreement provided Barletta with a blanket security interest in all of the Debtors' assets as collateral for any debts the Debtors owe to Barletta. Although the $150,000 loan to Phoenix was repaid in January, 2008, Barletta did not release the Debtors from their obligations under the Security Agreement at that time.

A few months later, Erie again informed Barletta that it was having financial difficulties. Barletta alleges that on March 20, 2008, Erie suspended all work on the Project because Barletta refused to pay Project-related costs incurred by Erie. In response to the work suspension, Barletta sent Erie a letter on

---

[2] Defendant EPM signed a separate security agreement.

March 24, 2008 terminating the Subcontract for non-performance and for failing to pay all debts for materials, labor and other items as required by the Subcontract. Barletta locked Erie out of the job site, retained Erie's equipment and hired another company to complete the Project.

Barletta then brought this lawsuit seeking reimbursement for the costs and labor that it paid on Erie's behalf. Barletta claims that Erie owes it $1,250,927 in back charges and additional Project costs chargeable to Erie because of Erie's breach. The defendants respond that Erie and Barletta had a verbal agreement providing that Erie would complete the project so long as Barletta paid for all expenses related to the project including payroll, taxes, insurance, materials and supplies.

## II. **Procedural History**

Barletta filed its complaint on January 30, 2009, along with a motion for a preliminary injunction prohibiting the defendants from transferring or disposing of any assets covered by the Security Agreement. At an initial hearing on March 6, 2009, the Court allowed the motion. After defendants later stated that they did not oppose its continuation, the preliminary injunction was extended for the duration of this litigation.

The defendants subsequently filed a counterclaim against Barletta, seeking a declaratory judgment stating that the Security Agreement is unenforceable and that Barletta did not

have the right to seize their equipment.  Furthermore, they allege 1) breach of the covenant of good faith and fair dealing, 2) conversion of the defendants' equipment and assets, 3) a Chapter 93A violation, 4) breach of contract and 5) estoppel. The defendants also moved for a preliminary injunction seeking the return of unspecified equipment allegedly in the custody of Barletta.  After the parties reported that they could not resolve the matter on their own, the Court issued a Memorandum and Order on May 15, 2009 denying the motion.

The defendants next moved to dismiss pursuant to a forum selection clause in the Subcontract.  On December 29, 2009, the Court issued a Memorandum and Order denying that motion.  In January, 2010, the plaintiff filed an emergency motion to modify the preliminary injunction, which the Court denied.

In June, 2010, the Court referred the case to alternative dispute resolution before Magistrate Judge Marianne B. Bowler but the parties were unable to resolve their differences.  Thus, on October 26, 2010, the plaintiff moved for summary judgment, seeking judgment on liability on all counts.  The defendants opposed the motion and filed a limited cross-motion for summary judgment.  The defendants also move for a hearing on the plaintiff's motion.

On November 17, 2010, the plaintiff and EPM agreed to a partial stipulation of dismissal as to the claims and

counterclaims asserted between them. On that same day, the plaintiff filed an assented-to motion to strike and/or set aside jury demands because the parties have signed jury waivers.

### III. **Motion for Summary Judgment**

**A. Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citation omitted). The burden is on the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the

entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### B. Barletta's Breach of Contract Claim

Barletta moves for summary judgment on liability and, thus, bears the burden to show that there is no genuine issue of material fact and that it should, as a matter of law, prevail on the merits. It is undisputed that, throughout 2007 and into early 2008, Barletta paid all of Erie's labor and materials for the Project. The disputed issue is whether Erie must repay Barletta for the costs and labor.

Barletta maintains that it is entitled to repayment from Erie for the costs it paid pursuant to Clause 1.1 of the Subcontract, which provides that:

> The Subcontractor shall furnish and pay for all work, labor, materials, equipment, tools, light, power, details, computations, drawings, submittals, samples, schedules and all other facilities[.]

The defendants proclaim, and Barletta denies, that Erie and Barletta had an oral agreement to modify the Subcontract such that Barletta would pay for all of Erie's labor and materials in order to finish the project on time and avoid finding a new sub-

-7-

contractor ("the Alleged Modification"). The defendants do not give a date for the Alleged Modification but vaguely state that it occurred after August, 2006. They argue that Barletta has failed to proffer any evidence that it expected or requested repayment of the costs, and that, as a result, "the evidence is all consistent with an oral modification". The defendants also assert that the Subcontract was modified by Barletta's course of performance because Barletta continuously acted as if the Alleged Modification was in effect.

### 1. Statute of Frauds

In response, Barletta insists that proof of any modification of the Subcontract must be in writing pursuant to the Uniform Commercial Code, Mass. Gen. Laws ch. 106, § 2-201 (writing required for contracts for the sale of goods) and the so-called Statute of Frauds, Mass. Gen. Laws ch. 259, § 1 (writing required for contracts that cannot be performed in one year). The Court disagrees. First, the Statute of Frauds does not apply because, although Barletta's General Contract had a term of 18 months, Erie's work conceivably could have been completed within one year. See AAA Climbers, Inc. v. Above Grade Dev., Corp., No. 04-483, 2007 WL 2935412, at *3 (Mass. Super. Sept. 11, 2007) (holding that a contract for the removal of trees and excavation could be performed within one year and, thus, did not fall under the ambit of the statute of frauds). Second, the Alleged

Modification involves the payment of costs and labor to perform a service, and is readily distinguishable from a contract for the sale of goods.  See Ross-Simons of Warwick, Inc., v. Baccarat, Inc., 102 F.3d 12, 17 (1st Cir. 1996).  Thus, the Court finds that the statute of frauds does not apply to the Subcontract.

### 2. The Merger Clause

Barletta also argues that, to be enforceable, any modification of the Subcontract must be in writing because the Subcontract's merger clause bars a finding of an implied contractual provision.  Indeed, this Court has held that a merger clause precludes a finding of an implied right.  Davis v. Prot. One Alarm Monitoring, Inc., No. 03-40195-FDS, 2005 WL 3728711, at *6 (D. Mass. Nov. 2, 2005).  Nevertheless, Massachusetts courts will enforce an oral contract modification even in the presence of a merger clause where evidence of that modification overcomes the presumption that "the written agreement rather than any alleged subsequent oral modification should govern."  Beal Bank S.S.B. v. Krock, No. 97-2241, 1998 WL 1085807, at *2-3 (1st Cir. Sept. 3, 1998) (quoting Cambridgeport Sav. Bank v. Boersner, 597 N.E. 2d 1017, 1021 n.10 (Mass. 1992)).

None of the evidence offered by the parties refers to an oral agreement between the parties.  In any event, on a motion for summary judgment, the Court must view the record in a light most favorable to the non-moving party.  As indicated by the

defendants, the plaintiff's conduct (paying Erie's expenses) is some evidence of an oral agreement to modify. Thus, after reviewing the correspondence between the parties, the Court finds that there is a genuine issue of material fact as to whether the Subcontract was modified and, if so, how it was modified.

The Court also notes that there is a genuine issue of material fact as to whether Erie stopped working on the project on March 20, 2008. The defendants maintain that Erie had workers at the pier on March 21, 22 and 25, 2008, had not ceased working on the Project and had only stopped for the weekend due to the Easter holiday and extraordinary high tides. Given that such genuine issues of material fact remain, the Court concludes that summary judgment is inappropriate on the plaintiff's breach of contract claim.

### C. Plaintiff's Chapter 93A Claim

Barletta maintains that Erie violated Chapter 93A by refusing to work unless Barletta continued to pay Erie's project-related costs and that such action was coercive, unfair and deceptive. To prevail on a Chapter 93A claim, the plaintiff must show that the defendant engaged in "immoral, unethical, oppressive or unscrupulous" tactics. Bank of Am., N.A. v. Prestige Imports, Inc., 917 N.E. 2d 207, 229 (Mass. App. Ct. 2009) (quoting Renovator's Supply, Inc. v. Sovereign Bank, 892 N.E.2d 777 (Mass. App. Ct. 2008)).

Indeed, courts require more evidence of unfair conduct for recovery under Chapter 93A than is shown here. See Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 13, 17-18 (1st Cir. 1985) (holding that withholding a contractually due payment on a small delivery in order to force the plaintiff to make large deliveries in the future was a Chapter 93A violation). A breach of contract, without more, does not constitute a violation of Chapter 93A. Id. at 18. Viewing the record in a light most favorable to the non-moving party, the Court surmises that Erie asked for the money because it was experiencing financial difficulties and not in an effort to exploit Barletta. Thus, Erie has raised a genuine issue of material fact as to whether its conduct rose to the level required for a claim under Chapter 93A and Barletta's motion for summary judgment on its Chapter 93A claim will be denied.

**D.   Limited Cross-Motion for Summary Judgment**

The defendants move for summary judgment with respect to the liability of Phoenix, Moutsastos and Steven for Erie's debts pursuant to the Security Agreement.  They argue that the Security Agreement does not make the non-Erie defendants jointly or severally liable for any of Erie's debt to Barletta.  The defendants argue that each debtor is only liable for his/her own debts under the Security Agreement.

The Statute of Frauds requires that a contract which charges

a person with the promise to answer for the debt of another be in writing.  Mass. Gen. Laws ch. 259, § 1.  Proof sufficient to override the Statute of Frauds must be "clear and persuasive." Ryan v. Ryan, 642 N.E. 2d 1028 (Mass. 1994).  The Security Agreement does not distinguish Erie from the other debtors in any clause.  To the contrary, it groups all of the defendants together and refers to them as "the Debtor".  It refers to "all liabilities or obligations of the Debtor to the Lender of every kind and description" and defines "collateral" as

> all of Debtor's right, title and interest in . . . [a]ll of the goods, chattels . . . and all other personal property of the Debtor[.]

Moreover, the defendants have cited no cases in which an agreement is interpreted in the manner they suggest.  Thus, the Court finds that the plain language of the Security Agreement creates a joint and several obligation for any debt owed to Barletta by the Debtors, including Phoenix, Moutsastos and Steven.  For that reason, the defendants' motion for limited summary judgment will be denied.

**IV.  Plaintiff's Motion to Strike and/or Set Aside Jury Demands**

Given that the plaintiff's motion to strike and/or set aside its jury demands is assented-to by the defendants, the Court will allow it.

**ORDER**

In accordance with the foregoing,

1) the plaintiff's motion for summary judgment (Docket No. 85), the defendants' cross-motion for limited summary judgment (Docket No. 86) and the defendants' motion for a hearing (Docket No. 87) are **DENIED;** and

2) the plaintiff's assented-to motion to strike and/or set aside jury demands (Docket No. 90) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 27, 2011